UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

**BASHAR SABBAGH,**

       Plaintiff,

v.

**TOWNSHIP of MAHWAH,**
**TIMOTHY LETAVISH, ERIC LARSEN,**
**KEVIN HEBERT, HOME DEPOT INC.,**
**DWAYNE HARRIS, MICHELLE**
**O' DONOHUE, JOHN DOES 1-10 (fictitious**
**Individuals whose identities are not yet known),**

       Defendants.

_____

Civil Case No. _____

**COMPLAINT and**
**JURY DEMAND**

Plaintiff, Bashar Sabbagh, having a residence at 670 Shawnee, Franklin Lakes, Bergen County, New Jersey, by way of complaint and through counsel, does hereby assert against the following defendants:

<u>Parties</u>

1.     Plaintiff, Bashar Sabbagh, is an individual who resides at 670 Shawnee Drive, Franklin Lakes, New Jersey.

2.     Defendant, Home Depot Inc., is a multi-national corporation having a store open for business at 465 Route 17, in the Township of Mahwah, New Jersey, and Dwayne Harris was at all relevant times its loss-prevention employee.

3.     Township of Mahwah is a municipality organized under the laws of the State of New Jersey and has an address at 475 Corporate Drive, Mahwah, New Jersey.

4.     Timothy Letavish was at all relevant times an employee of the Township of Mahwah and a detective in the Mahwah Police Department.

5.     Eric Larsen was at all relevant times an employee of the Township of Mahwah and a detective sergeant in the Mahwah Police Department.

1

6.      Kevin Hebert was at all relevant times an employee of the Township of Mahwah and a detective in the Mahwah Police Department.

7.      Michelle O'Donohue was at all relevant times an employee of the Township of Mahwah and, upon information and belief, a Clerk with the Mahwah Municipal Court.

8.      JOHN DOES 1-10 are fictitious individuals whose identities are not yet known but who may have had some involvement and responsibility for the injuries suffered by Plaintiff as stated in this complaint.

<u>Jurisdiction</u>

9.  This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over Plaintiff's claims that are based on state law, under 28 U.S.C. § 1367.

<u>Venue</u>

10.  Venue in the United States District Court for the District of New Jersey Newark Vicinage is proper pursuant to 28 U.S.C. § 1391 because the actions and omissions at issue occurred in and near Mahwah, northern New Jersey.

<u>Facts</u>

11.      On November 1, 2022 Dwayne Harris, as a Home Depot employee and loss prevention representative, reported a shoplifting incident to the Mahwah Police Department's, Det. Timothy Letavish.

12.      Harris reported that he had observed video of a person, later identified as Plaintiff, walk past the point of sale with 3 buckets of roofing cement worth $312.00.

13.      Letavish reviewed the video which showed Plaintiff pushing a shopping cart into the store with items in the upper basket.

14.     The video is claimed also to show Plaintiff obtain three buckets of roofing cement, walk back toward the entrance doors, pause briefly while observing Home Depot employees in a meeting, and exiting the store.

15.     There is no information in the video whether Plaintiff had previously paid for the roofing cement or was cleared by a store employee to leave.

16.     Home Depot maintains a substantial online purchasing business whereby customers can pre-pay for items online and then retrieve them in the store.

17.     Plaintiff was one of those Home Depot customers who purchased items online for later pickup, and did so extensively with a Home Depot contractor account.

18.     Plaintiff purchased tens of thousands of dollars of items from Home Depot online for store pickup between 2021 and 2022.

19.     In the months before Harris reported a theft of these 3 buckets of roof cement Plaintiff had purchased roof cement several times.

20.     In the month immediately before Harris reported the suspected theft of these 3 buckets of roof cement Plaintiff had purchased almost $2,000 of roofing cement.

21.     Harris reportedly utilized data which Home Depot maintained to identify the Plaintiff as a suspect to the Mahwah Police Department.

22.     However, Harris either did not investigate or ignored Plaintiff's extensive online purchase history and made no investigation whether the items that Plaintiff left the store with were previously purchased online.

23.     Upon information and belief, Harris did not inquire of any store employees on duty the day of the alleged theft whether they had assisted Plaintiff and allowed him to retrieve the 3 buckets shown on the video.

24.     From limited facts, and by ignoring or failing to investigate other facts that Home Depot maintained as part of its business, Harris presumed that Plaintiff had not purchased the 3 roofing cement buckets simply because he did not pass through the store's checkout lanes.

25.     Roofing cement was at the time in short supply due to Hurricanes and Plaintiff, among other contractors, was buying whatever was available from all Home Depot stores.

26.     Plaintiff would often buy items online as shown in stock and then be told at Home during pickup that the purchased items were not in stock.

27.     Home Depot employees often gave Plaintiff similar and equivalent products to those advertised as in stock but that were not in inventory after Plaintiff made his online purchase.

28.     On the day in question Plaintiff returned items previously purchased at Home Depot and tried to pick up 3 buckets previously purchased that were not in stock as originally advertised.

29.     Plaintiff and a Home Depot employee attempted to locate items that Plaintiff had purchased which Home Depot's inventory system said were in stock, but could not locate any.

30.     Plaintiff was given the 3 buckets he left with by the Home Depot employee as a substitute to complete his order.

31.     Upon receiving Harris' uninvestigated report of suspected theft, Letavish, in turn, accepted the Home Depot citizen's complaint for shoplifting as true, and contacted Plaintiff at his home to investigate.

32.     At Plaintiff's home Plaintiff advised Letavish that he had purchased 21 buckets of roofing cement in the month before the report.

33.     Plaintiff told Letavish that when he picked up his last order Home Depot was 3 buckets short of what he had purchased online.

34.     Plaintiff told Letavish that he was given those 3 buckets when he returned to the Home Depot store on October 29th.

35.     Plaintiff invited Letavish into his home and showed him on his computer screen records of Plaintiff's extensive purchases from Home Depot.

36.     Plaintiff then had his attorney contact Home Depot and try to resolve the dispute.

37.     However, Home Depot and Harris did not withdraw their citizen's complaint with Mahwah police.

38.     They did not further investigate the Plaintiff's dispute that he had paid for 3 buckets and been permitted by Home Depot employees to take those 3 shown on the video in question to complete his order.

39.     In addition, the Mahwah Police and Letavish did not accept that Plaintiff's online billing statements and records of purchase presented at least a dispute to the shoplifting charge that Home Depot had asserted, such that they would report back to Home Depot to make further investigation before a criminal charge could issue from the police department.

40.     Letavish should have told Harris of the information he obtained from Plaintiff and directed Harris to investigate further.

41.     Letavish did not personally observe the commission of any crime and the theft complaint could not originate from his personal knowledge or observation of only an isolated video that did not confirm whether the 3 items had been purchased online previously for instore pickup.

42.     Letavish also could not know at all, from what he did observe, whether or not Plaintiff had purchased the roofing cement in question online for in-store pickup.

43.     Letavish also saw Plaintiff on video bringing items into the store which would show a lack of any criminal intent to steal anything.

44.     However, Letavish did not follow up with Home Depot to investigate what were those items being brought into the store for return, or whether Plaintiff was returning items he had previously purchased in store or online.

45.     In response, Plaintiff showed an extensive history of online purchases, and later emailed Letavish documents showing the online purchase history.

46.     Neither Letavish nor Larsen appear to have advised Harris or Home Depot that Plaintiff had reported in response to their investigation that he paid for the items online, nor did they request that Home Depot check its records before proceeding further on its citizen's complaint.

47.     The theft complaint constituted a citizen's criminal complaint that only Home Depot could assert because no police officer witnessed an actual crime in their presence, and the video shown did not eliminate the possibility that Plaintiff was participating in Home Depot's online purchase and in-store pickup program.

48.     Because the amount in controversy exceeded $200 based on Home Depot's assertions, a charge of theft constituted a 4th degree indictable offense under New Jersey law.

49.     New Jersey Court Rule 3:2-1(a) prohibits issuance of criminal process on a citizen's complaint for an indictable offense by anyone except "a judge".

50.     In addition, Rule 3:2-1 requires that prior to a finding of probable cause on the issuance of a Complaint Warrant (CDR-2) or a Complaint Summons (CDR-1) charging any indictable offense made by a private citizen against any individual, the Complaint Warrant or Complaint Summons shall be reviewed by a county prosecutor for approval or denial.

51.     Rule 3:2-1 further requires that the prosecutor, if approving the charge, must indicate its decision on the complaint and then submit it to a judge who must then determine if probable cause exists and whether to issue a Complaint Warrant or Complaint Summons in accordance with Rule 3:3-1.

52.     Rule 3:2-1 further requires that "the citizen's complaint charging an indictable offense shall be reviewed by the judge for a probable cause finding and whether to issue a Complaint-Warrant or Complaint-Summons pursuant to R. 3:3-1."

53.     Rule 3:3-1 reiterates that citizen's complaints for indictable offenses, "must be issued by a judge pursuant to R. 3:2-1(a)(2)".

54.     No citizen's complaint for an indictable offense can comply with due process under the Constitution without prior review by both the County Prosecutor and a Judge for findings of probable cause before the charge is issued.

55.     Rule 3:3-1 further prohibits issuance of Complaint-Warrants (CDR-2) versus Complaint-Summons (CDR-1) except in expressly defined circumstances.

56.     The Rule "presumes" that a Complaint-Summons is the initial charging method and facts must exist for the charging authority to vary that presumption and issue a warrant allowing immediate arrest.

57.     To issue a Complaint-Warrant (CDR-2), as was done here, instead of a Complaint-Summons (CDR-1) two findings are required to be made:

(1) a judicial officer finds from the complaint or an accompanying affidavit or deposition, that there is probable cause to believe that an offense was committed and that the defendant committed it and notes that finding on the warrant; and

(2) a judicial officer finds that paragraphs (d), (e), or (f) of this rule allow a warrant rather than a summons to be issued.

58.     In all other instances a Complaint-Summons (CDR-1) is the presumed method for issuance of process by which a criminal action must be commenced by anyone other than a Judge who has found probable cause, and after County Prosecutor review if indictable.

59.     R. 3:3-1(d), entitled "Grounds for Overcoming the Presumption of Issuance of a Complaint-Summons (CDR-1)",  strictly limits any judicial officer's use of a CDR-2 (complaint-warrant for arrest) and requires judicial scrutiny of a law enforcement officer's improper use of a CDR-2, as follows:

Notwithstanding the presumption that a complaint-summons shall be issued when a defendant is charged with an offense other than one set forth in paragraphs (e) or (f) of this rule, when a law enforcement officer prepares a complaint-warrant rather than a complaint-summons in accordance with guidelines issued by the Attorney General pursuant to N.J.S.A. 2A:162-16, the judicial officer may issue a complaint-warrant when the judicial officer finds

pursuant to paragraph (a) of this rule that there is probable cause to believe that the defendant committed the offense, and has reason to believe, based on one or more of the following factors, that a complaint-warrant is needed to reasonably assure a defendant's appearance in court when required, to protect the safety of any other person or the community, or to assure that the defendant will not obstruct or attempt to obstruct the criminal justice process:

(1) the defendant has been served with a summons for any prior indictable offense and has failed to appear;

(2) there is reason to believe that the defendant is dangerous to self, or will pose a danger to the safety of any other person or the community if released on a summons;

(3) there are one or more outstanding warrants for the defendant;

(4) the defendant's identity or address is not known and a warrant is necessary to subject the defendant to the jurisdiction of the court;

(5) there is reason to believe that the defendant will obstruct or attempt to obstruct the criminal justice process if released on a summons;

(6) there is reason to believe that the defendant will not appear in response to a summons; or

(7) there is reason to believe that the monitoring of pretrial release conditions by the pretrial services program established pursuant to N.J.S.A. 2A:162-25 is necessary to protect any victim, witness, other specified person, or the community.

When the application for a complaint-warrant is based on reason to believe that the defendant will not appear in response to a summons, will pose a danger to the safety of any other person or the community, or will obstruct or attempt to obstruct the criminal justice process if released on a summons, the judicial officer shall consider the results of any available preliminary public safety assessment using a risk assessment instrument approved by the Administrative Director of the Courts pursuant to N.J.S.A. 2A:162-25, and shall also consider, when such information is available, whether within the preceding ten years the defendant as a juvenile was adjudicated delinquent for escape, a crime involving a firearm, or a crime that if committed by an adult would be subject to the No Early Release Act (N.J.S.A. 2C:43-7.2), or an attempt to commit any of the foregoing offenses. The judicial officer shall also consider any additional relevant information provided by the law enforcement officer or prosecutor applying for the complaint-warrant.

60.    Defendants, Letavish, Larsen, Mahwah and O'Donohue failed to follow any of the Rules and due process requirements applicable to the Home Depot citizen's complaint for a $312.00 shoplifting claim.

61.    Instead, on December 22, 2022 Letavish prepared a CDR-2 Complaint-Warrant which charged the 4th degree indictable offense of shoplifting.

62.     On the same date or shortly thereafter, Larsen, as Detective Sergeant supervising Letavish, approved of Letavish's use of a Complaint-Warrant instead of the presumed Complaint-Summons that the Rules required.

63.     On the same date or shortly thereafter, O'Donohue, as a representative of the Mahwah Municipal Court, purported to find probable cause for Home Depot's citizen's complaint for an indictable offense using the wrong method of process.

64.     She did so based on only Letavish's affidavit, which did little more than report that the video Harris presented showed Plaintiff leaving the store with 3 buckets, and which did not report Plaintiff's dispute during his further investigation.

65.     However, in his preliminary incident report Letavish had confirmed that he was told Plaintiff was a "frequent shopper" at Home Depot.

66.     No County Prosecutor received the complaint-warrant or reviewed it to determine if it was appropriate to issue and create an indictable criminal action against Plaintiff for a $312.00 shoplifting charge made by a citizen and not witnessed by a police officer.

67.     No Judge reviewed the complaint-warrant or found probable cause before it was issued, despite the fact that it was a citizen's complaint charging an indictable offense.

68.     O'Donohue also did not make any findings that overcame the law's presumption on the issuance of a Complaint-Summons in this case versus an actual warrant for Plaintiff's arrest.

69.     O'Donohue was not allowed to act as a judicial officer to find probable cause on a Complaint-Warrant charging an indictable offense when originating from a citizen complaint.

70.     A Complaint-Summons was required to institute process and service of that personally on the Plaintiff, which did not permit an immediate arrest.

71.     No Complaint-Summons was issued or served to Plaintiff.

72.    Instead, Letavish reported in his investigative notes that he had tried to get the Plaintiff to come to the police station voluntarily by communicating with Plaintiff's attorneys, but that Plaintiff did not appear.

73.    However, since Letavish did not issue or serve the required Complaint-Summons, despite having visited Plaintiff's home during his investigation, he had no authority to compel Plaintiff to meet with him.

74.    Instead, Letavish and Larsen decided that they could force the Plaintiff to come to the police station at their request without issuance of any process.

75.    When Plaintiff did not come, they then unlawfully employed a Complaint-Warrant as the method to commence Home Depot's citizen's complaint for an indictable offense.

76.    O'Donohue knew, or should have known, that a Complaint-Warrant was not authorized to commence this criminal action and that none of the law's factors existed that allowed the overcoming of the presumption that a Complaint-Summons should be issued and served to Plaintiff pursuant to R. 4:4-4.

77.    O'Donohue knew or should have known also that Letavish did not witness the commission of any crime and that he had relied on the statements of Home Depot and Harris for their citizen's complaint and an isolated video, which did not show any information whether Plaintiff had previously purchased the items eliminating the need to stop at a point-of-sale.

78.    O'Donohue knew or should have known also that Letavish had information from Plaintiff that contended he had paid for the items online, and that information cast doubt on the existence of probable cause for Home Depot's citizen's complaint.

79.    O'Donohue, Letavish and Larsen all knew or should have known that a Complaint-Warrant, whether or not improperly used, was still required to be sent only to a Judge to decide probable cause before issuance of process or arrest of Plaintiff.

80.    O'Donohue, Letavish and Larsen all knew or should have known that a Complaint-Warrant, whether or not improperly used, was also required to be sent to the County Prosecutor for review before issuance even to the Judge who would then decide probable cause.

81.    Upon information and belief, O'Donohue, Letavish and Larsen all knew that County Prosecutor review before issuance of process would have resulted in an administrative downgrade of the proposed 4th degree indictable offense to a disorderly persons offense, which would preclude any use of a Complaint-Warrant.

82.    Letavish and Larsen intentionally did not submit the Complaint-Warrant either to the County Prosecutor or a Judge because they knew a $312.00 citizen's complaint for shoplifting would be immediately downgraded and a warrant for Plaintiff's immediate arrest would be prohibited.

83.    Instead, a Complaint-Summons for a disorderly persons offense, is all that they would have legally been permitted to generate and that would not permit Plaintiff's arrest at all absent prior service of the summons and Plaintiff's later failure to appear in Court on a designated date for determination of probable cause and/or arraignment.

84.    In negligent or intentional violation of the law, O'Donohue, Letavish and Larsen caused the issuance of an unlawful and unauthorized complaint and an immediate warrant for Plaintiff's arrest without County Prosecutor review or a Judge's approval and finding of probable cause, and did so on a citizen's complaint without disclosing all of the facts known.

85.    As a direct and proximate result of those violations of law, Plaintiff was improperly made subject to immediate arrest for a citizen's complaint of theft of only $312.00 and was made subject to the unlawful abuse of process involving the issuance of criminal process by O'Donohue, Letavish and Larsen in violation of Plaintiff's constitutional and civil rights.

86.    Only a Complaint-Summons should have issued, if anything, and not without prior County Prosecutor review and/or a Judge finding probable cause since the charge was indictable.

87.    Plaintiff never should have been subject to any arrest warrant but was only because of the abuse of process undertaken by the Defendants here.

88.    In furtherance of the Defendants' misuse and abuse of process, once the Complaint-Warrant was issued by O'Donohue without a Judge or Prosecutor review, Letavish attempted on two occasions in December 2022 to arrest the Plaintiff.

89.    Although Letavish knew where Plaintiff lived, on December 27, 2022 Letavish and Hebert went to Plaintiff's place of business in Hackensack, purportedly to serve the improperly issued arrest warrant and take Plaintiff into custody.

90.    On January 12, 2023, Letavish again attempted to arrest Plaintiff on the Defendants' unlawful warrant at Plaintiff's home, but Plaintiff was not there.

91.    Without County Prosecutor or judicial review, the Defendants also registered their arrest warrant with the National Crime Information Center (NCIC) which directed police departments who encountered Plaintiff to arrest him.

92.    In January 2023 Plaintiff emailed Letavish to advise that he was out of the country visiting his mother, who was ill, and that he would address the shoplifting charge when he returned.

93.    Upon information and belief, Defendants then changed and expanded the unlawfully issued arrest warrant to include parts of the State of New York in which international airports were located in order that Plaintiff would be denied entry on his return to the United States and detained.

94.    There was no legitimate reason to create any arrest warrant at all in this case, let alone to enter a fugitive warrant or any other information with NCIC, or to expand the unlawfully issued Complaint-Warrant to apply out of state on a $312.00 citizen's complaint for shoplifting.

95.    Defendants acted maliciously to unlawfully institute criminal process, and thereafter abused lawful criminal process in order to subject Plaintiff to arrest and loss of liberty for a $312.00 citizen's complaint for shoplifting which would not likely have survived County Prosecutor administrative review or scrutiny by an actual Judge, as required by law.

96.     Defendants knew that Plaintiff was out of the county based on Plaintiff's email and, in response to that knowledge, they unlawfully expanded or altered their unlawful warrant to include New York State where they expected Defendant to fly on his return to America.

97.     Defendants' unlawful actions to abuse process and falsely arrest Plaintiff by unlawful warrant succeeded.

98.     On January 31, 2023, as he was returning to Kennedy Airport from visiting his mother in Syria, Plaintiff was detained by Customs and Border Protection officials based on the Defendant's improper warrant for arrest and its expansion outside of the State of New Jersey.

99.     Upon information and belief, when information was sought about the Defendant's warrant Defendants untruthfully advised the law enforcement officers who were detaining the Plaintiff that Defendants believed Plaintiff was attempting to leave the country to avoid prosecution on their $312 shoplifting charge.

100.    In reality, the Defendants knew that Plaintiff was returning to the country because he had emailed Letavish that he was in Syria.

101.    In reality, Defendant's representation to New York and federal law enforcement authorities was a knowingly untrue statement aimed at persuading them to continued to detain Plaintiff on an arrest warrant that should not have existed at all.

102.    Plaintiff was, in fact, then remanded into custody on this unlawfully issued warrant and was sent to Rikers Island prison.

103.    On February 1, 2023 Plaintiff appeared in Criminal Court in the City of New York wherein the People of the State of New York represented to the Court that Defendants had claimed Plaintiff was attempting to flee the country on a $312 shoplifting charge.

104.    The State further represented that the warrant at issue was a "fugitive warrant" requiring remand.

105.    The Court found that, because the Defendants had issued a fugitive warrant, it could not release the Plaintiff on bail and he would be required to waive extradition.

106.    Plaintiff immediately waived extradition on February 1, 2024.

107.    However, Defendants did not come to pick him up and bring him before a New Jersey Court on their unlawful warrant for another 7 days.

108.    Plaintiff's wife wrote to Defendants on February 2, 2023 to ask them to go and get him from Riker's Island and advised he had waived extradition, but they did not.

109.    On February 3, 2023 Defendant's counsel wrote to the municipal court judge to ask him to vacate the warrant.

110.    On February 6, 2023 Defendant's criminal defense counsel wrote to Defendants, Hebert and Letavish, confirming that Plaintiff had waived extradition 5 days earlier and was still being imprisoned on their warrant in Riker's Island, again requesting they pick him up.

111.    Defendants, Letavish, Larsen and Hebert, and John Does 1-10, did not go and retrieve the Plaintiff on their unlawful warrant and instead knowingly left in Riker's Island prison for a total of 8 days.

112.    Defendants did not pick Plaintiff up until the afternoon of February 7, 2023 and transported him to their custody in Mahwah.

113.    On February 8, 2023, which was apparently the Bergen County Prosecutor's Office's first involvement with the case that the Defendants had unlawfully commenced by Complaint-Warrant, the assigned Assistant Prosecutor immediately downgraded the charged offense to a disorderly persons and released Plaintiff from custody.

114.    Upon information and belief, if had Defendants followed the law and procedure and adhered to standards of due process, and sent their drafted Complaint-Warrant to the County Prosecutor for review, the resulting immediate administrative downgrade would have happened from the inception in December 2022, and no arrest warrant would have ever existed in this case.

115.    Upon information and belief, had Defendants followed the law and procedure and adhered to standards of due process, and sent the citizen's complaint to a Judge for review of probable cause, no arrest warrant would ever have existed in this case.

116.    Upon information and belief, had Defendants followed the law and procedure and adhered to standards of due process, and issued a Complaint-Summons no arrest warrant would have ever existed by which Plaintiff could have lost his liberty on January 31, 2023.

117.    Upon information and belief, had Defendants followed the law and procedure and adhered to standards of due process, Plaintiff would not have been deprived of his liberty for any period of time and certainly not in Riker's Island prison for 8 days.

118.    Instead, Plaintiff's criminal defense counsel could have appeared in the case in response to a Complaint-Summons, whether or not downgraded to a disorderly persons offense by the County Prosecutor.

119.    Plaintiff's criminal defense counsel could have then advised the Court presiding that Plaintiff was out of the country visiting his sick mother and could have arranged for a probable cause hearing and/or arraignment on his return.

120.    Instead, because the Defendants intentionally, knowingly or negligently did not follow the law and procedure or adhere to standards of due process, they caused Plaintiff's loss of liberty and unlawful seizure on January 31, 2023 and detention in Rikers Island prison for 8 days and thereafter in Mahwah, in violation of civil rights, equal protection of law, and the 4th and 14th amendment to the U.S. Constitution's due process requirements.

121.    There was no probable cause for the issuance of this citizen's complaint.

122.    Defendants did not obtain any appropriate finding of probable cause because O'Donohue was not authorized to make such a finding.

123.    There was a violation of Plaintiff's rights to due process of law and freedom against unreasonable seizure of his person in violation of the 4th and 14th Amendments to the United States

Constitution and the New Jersey Constitution, and there was a repeated abuse of process by Defendants, Letavish, Hebert and Larsen and O'Donohue, as well as John Does 1-10.

124.    Those violations of law proximately caused the Defendant's false arrest, false imprisonment, violation of civil rights and unlawful loss of liberty for 8 days, including 7 at Riker's Island for a $312.00 shoplifting allegation not witnessed by any police officer.

125.    The administratively downgraded Home Depot complaint was tried in Central Municipal Court in Bergen County on November 16, 2023 as a disorderly persons offense.

126.    Defendant was acquitted.

127.    At that trial Letavish testified and admitted that during his visit to Plaintiff's home Plaintiff had shown him a transaction history.

128.    Letavish also admitted that Harris had told him that Home Depot knew Plaintiff was a contractor customer with multiple transactions.

129.    Harris also testified and admitted that he was not in the store on the date that Home Depot asserted a theft had occurred.

130.    He testified that a manager reported to him that someone left the store with 3 buckets of roof cement.

131.    Harris admitted that Plaintiff's Home Depot records showed Plaintiff purchased 11 cans of that roofing cement for pickup in early October.

132.    The Court in its acquittal of the Plaintiff found that Letavish had no personal observation of theft and was basing his report on an investigation and a video.

133.    The Court found that Plaintiff had records to show he purchased 11 cans of the subject roofing cement.

134.    The Court credited Plaintiff's testimony that he purchased 11 cans but was only given 8 the first time and was retrieving the other 3 on the date in question.

135.    Thus, Plaintiff was imprisoned unlawfully for 8 days on an improperly issued warrant for a citizen's complaint that was unfounded.

136.    Plaintiff has been substantially damaged physically, mentally and emotionally by that lengthy imprisonment in Riker's Island prison and the violation of his Constitutional and due process rights.

137.    But for the unlawful actions of the Defendants, Plaintiff would not have lost his liberty at all.

138.    Defendant, City of Mahwah, is responsible for the actions and omissions of its employees by its failure to train and failure to supervise their actions to ensure that they complied with law and the Constitutional protections afforded to all citizens, including Plaintiff.

139.    Defendant, Home Depot, Inc., is responsible for the actions and omissions of its employees by its failure to train and failure to supervise their actions to ensure that they complied with law and the Constitutional protections afforded to all citizens, including Plaintiff.

<u>Count One - Malicious Prosecution- Mahwah Defendants</u>

140.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

141.    Defendants, Mahwah, Letavish, Larsen and O'Donohue, and John Does 1-10, instituted or caused to be instituted a criminal prosecution of the Plaintiff.

142.    There was no probable cause for that criminal charge and Defendant was acquitted.

143.    Defendants knew or should have known that Plaintiff was innocent of the $312.00 shoplifting charge based on his extensive online purchases as a Home Depot contractor accountholder, and his evidence of multiple purchases in the time preceding the date of Home Depot's accusation.

144.    Defendants failed to make a proper investigation of facts and failed to present all facts to any appropriate judicial officer who the law required to determine probable cause.

145.    Defendants failed to present Home Depot's shoplifting complaint to an actual Judge who was the only judicial officer permitted to find probable cause on a citizen's complaint charging an indictable theft offense, such as this one.

146.    O'Donohue lacked legal authority to find probable cause on the charge made by Letavish and Larsen and John Does 1-10.

147.    No finding of probable cause was legally made in this matter because only a Judge was permitted to make one.

148.    Defendants acted maliciously to prosecute the Plaintiff.

149.    As a direct and proximate result of the Defendant's malicious prosecution and misuse of process, the Plaintiff was incarcerated in Riker's Island for 8 days and in Mahwah thereafter.

150.    Plaintiff was acquitted of the criminal charge.

WHEREFORE: Plaintiff demands judgment of the Court awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count Two - Abuse of Process</u>

151.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

152.    Defendants', Mahwah, Letavish, Hebert, Larsen and O'Donohue's and John Does 1-10 unlawful procedure to obtain and issue an arrest warrant without prior County Prosecutor or judicial review by an actual Judge, and on facts that did not allow overcoming the presumption that a Complaint-Summons be issued, was an abuse of process.

153.    That abuse of process is what permitted the existence and perpetuation by Defendants of an arrest warrant for Plaintiff by which Plaintiff lost his liberty for 9 days.

154.    Upon information and belief, the Defendants in addition entered their arrest warrant with NCIC and then unlawfully expanded their unlawful arrest warrant to apply out of state intentionally to include New York State areas in which they knew the Defendant would be flying to return to America from Syria.

155.    Upon information and belief, the Defendants intended their unlawful warrant, entry into NCIC without County Prosecutor approval, and the expansion of it without County Prosecutor approval to result in the Plaintiff's loss of liberty when he returned to America.

156.    In addition, despite knowledge as of February 1, 2023 that Defendant had waived extradition and could be removed from Riker's Island to Mahwah, the Defendants, Letavish, Larsen and Hebert failed to retrieve the Defendant for a week, and thereby increased his time imprisoned.

157.    As a direct and proximate result of the Defendant's unlawful actions, the Plaintiff lost his liberty and was subject to unconstitutional seizure of his person, and was detained for 9 days.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 3 - Violation of Civil Right 42 U.S.C. 1983</u>

158.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

159.    Defendants, Letavish, Larsen, Hebert, O'Donohue and John Does 1-10, acted under color of law.

160.    The Defendants' actions resulted in the unlawful and unconstitutional seizure of the Plaintiff on Defendant's improper arrest warrant, and the Plaintiff's loss of liberty for 9 days.

161.     In addition, despite knowledge as of February 1, 2023 that Defendant had waived extradition and could be removed from Riker's Island to Mahwah, the Defendants, Letavish, Larsen and Hebert failed to retrieve the Defendant and thereby increased his time imprisoned.

162.     Defendants' actions were not objectively reasonable and were without legal justification.

163.     Because only a Judge could decide probable cause for this matter and only after County Prosecutor review and approval, and because neither process of law occurred, there was no probable cause that supported any of these Defendants' actions which generated the arrest warrant that led to Plaintiff's unlawful imprisonment.

164.     The Defendants, Mahwah, Letavish, Larsen, Hebert, O'Donohue and John Does 1-10, under color of law subjected the Plaintiff to and caused the deprivation of Plaintiff's rights, privileges and immunities under the United States Constitution, including the loss of his liberty for a period of 9 days.

165.     The Defendants, Mahwah, Letavish, Larsen, Hebert, O'Donohue and John Does 1-10, acted in violation of 42 U.S.C. 1983 and are liable to Plaintiff for the injuries they have caused, as well as reimbursement of his attorneys' fees in this matter pursuant to 42 U.S.C. 1988.

166.     Defendant, Township of Mahwah, is liable and responsible for all damages incurred by Plaintiff by the actions and omissions of the Defendant-employees.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 4 - Violation of Civil Rights N.J.S.A. 10:6-2</u>

167.     Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

168.    Defendants, Mahwah, Letavish, Larsen, Hebert, O'Donohue and John Does 1-10, acted under color of law.

169.    The Defendants' actions resulted in the unlawful and unconstitutional seizure of the Plaintiff on Defendant's improper arrest warrant, and the Plaintiff's loss of liberty for 9 days.

170.    The Defendants' actions deprived Plaintiff of substantive due process and/or equal protection rights, privileges and/or immunities secured by the Constitution or laws of the United States, and/or substantive rights, privileges or immunities secured by the Constitution or laws of this State, including the right against unreasonable seizures and unlawful loss of liberty.

171.    Defendants' actions were not objectively reasonable and were without legal justification.

172.    Because only a Judge could decide probable cause for this matter and only after County Prosecutor review and approval, and because neither process of law occurred, there was no probable cause that supported any of these Defendants' actions which generated the arrest warrant that led to Plaintiff's unlawful imprisonment.

173.    The Defendants, Mahwah, Letavish, Larsen, Hebert, O'Donohue and John Does 1-10, under color of law subjected the Plaintiff to and caused the deprivation of Plaintiff's rights, privileges and immunities under the United States Constitution, including the loss of his liberty for a period of 9 days.

174.    The Defendants, Mahwah, Letavish, Larsen, Hebert, O'Donohue and John Does 1-10, acted in violation of N.J.S.A. 10:6-2, which protects citizens against deprivation of Federal and State constitutional rights.

175.    The Defendants, Mahwah, Letavish, Larsen, Hebert, O'Donohue and John Does 1-10,  and are liable to Plaintiff for the injuries they have caused, as well as reimbursement of his attorneys' fees in this matter pursuant to N.J.S.A. 10:6-2.

176.     Defendant, Township of Mahwah, is liable and responsible for all damages incurred by Plaintiff by the actions and omissions of the Defendant-employees.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 5 - False Arrest/False Imprisonment-Mahwah Defendants</u>

177.     Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

178.     The actions and omissions of Defendants, Mahwah, Letavish, Larsen, Hebert, O'Donohue and John Does 1- 10 directly and proximately caused the Plaintiff's loss of liberty and imprisonment for 9 days.

179.     The Plaintiff's arrest and detention was against his will and resulted only due to the actions and omissions of the Defendants which created an unlawful arrest, imposed an unlawful warrant for arrest, and elevated Defendant's status falsely as a fugitive on a $312.00 citizen's complaint for shoplifting not reviewed by the County Prosecutor or a Judge before issuance.

180.     The Plaintiff's arrest and detention was without legal justification and without legal authority.

181.     Plaintiff was falsely arrested and falsely imprisoned for 9 days due to the actions and omissions of the Defendants.

182.     Plaintiff's length of imprisonment was knowingly allowed by Defendants, Letavish, Larsen and Hebert, for several days after they knew he had waived extradition on their unlawful warrant.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 6 - Negligent Hiring-Mahwah Defendants</u>

183.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

184.    The Defendants, Letavish, Hebert, Larsen and O'Donohue and John Does 1-10 were not fit to perform the duties that they had on behalf of the Township of Mahwah.

185.    The Defendants knew or should have known the proper procedures to follow for the arrest and institution of criminal prosecutions of citizens including Plaintiff.

186.    The Defendants did not have minimal competence to perform the law enforcement or legal tasks they were assigned as agents and employees of the Township of Mahwah.

187.    The Township of Mahwah knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the Defendant-employees named in this action, and could reasonably have foreseen that such qualities created a risk of harm to other persons such as Plaintiff, including for violations of criminal due process rights.

188.    The Township of Mahwah was negligent in the hiring, promotion and retention of the Defendant-employees named in this action.

189.    That negligence by the Township of Mahwah directly and proximately resulted in a violation of Plaintiff's constitutional rights, false imprisonment, malicious prosecution and abuse of criminal process, and caused his unlawful incarceration for 9 days.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 7 - Negligent Failure to Train-Mahwah Defendants</u>

190.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

191.    The Defendants, Letavish, Hebert, Larsen and O'Donohue and Jon Does 1-10 were not fit to perform the duties that they had on behalf of the Township of Mahwah because they were not properly trained in proper criminal procedure methods that comported with law and the Constitutional Rights of citizens, including Plaintiff.

192.    The Defendants knew or should have known the proper procedures to follow for the arrest and institution of criminal prosecutions of citizens including Plaintiff.

193.    Because of the Township of Mahwah's negligent failure to train and/or supervise the employee Defendants named in this action, those Defendants did not have minimal competence to perform the law enforcement or legal tasks they were assigned as agents and employees of the Township of Mahwah.

194.    The Township of Mahwah knew or had reason to know of the Defendant-employee's lack of knowledge and need for training and supervision as to legal methods of institution of criminal process, and could reasonably have foreseen that such lack of training or supervision created a risk of harm to other persons such as Plaintiff, including for violations of criminal due process rights.

195.    The Township of Mahwah was negligent in the training and supervision of the Defendant-employees named in this action.

196.    That negligence directly and proximately resulted in a violation of Plaintiff's constitutional rights, false imprisonment, malicious prosecution and abuse of criminal process, and caused his unlawful incarceration for 9 days.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 8 - Malicious Prosecution- Home Depot Defendants</u>

197.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

198.    Defendants, Harris, Home Depot, and John Does 1-10, instituted or caused to be instituted a criminal prosecution of the Plaintiff.

199.    There was no probable cause for that criminal charge and Defendant was acquitted.

200.    Defendants knew or should have known that Plaintiff was innocent of the $312.00 shoplifting charge based on his extensive online purchases as a Home Depot contractor accountholder, and his evidence of multiple purchases in the time preceding the date of Home Depot's accusation.

201.    Defendants failed to make a proper investigation of facts and failed to present all facts to the police department to whom Defendant reported a crime.

202.    Defendants acted maliciously to prosecute the Plaintiff.

203.    As a direct and proximate result of the Defendants' malicious prosecution the Plaintiff was incarcerated in Riker's Island for 8 days and in Mahwah thereafter.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

Count 9 - False Arrest/False Imprisonment-Home Depot Defendants

204.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

205.    The actions and omissions of Defendants, Harris, Home Depot and John Does 1- 10 directly and proximately caused the Plaintiff's loss of liberty and imprisonment for 9 days.

206.    The Plaintiff's arrest and detention was against his will and resulted only due to the actions and omissions of the Defendants which caused and created an unlawful arrest, imposed an unlawful warrant for arrest, and then elevated Defendant's status falsely as a fugitive on a $312.00

citizen's complaint for shoplifting not reviewed by the County Prosecutor or a Judge before issuance.

207.     The Plaintiff's arrest and detention was without legal justification and without legal authority.

208.     Plaintiff was falsely arrested and falsely imprisoned for 9 days due to the unlawful and unjustified actions and omissions of all of the Defendants.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 10 - Negligent Hiring-Home Depot Defendants</u>

209.     Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

210.     The Defendants, Harris and John Does 1-10, were not fit to perform the duties that they had on behalf of Home Depot.

211.     The Defendant, Home Depot, knew or should have known the proper procedures to follow for the investigation of criminal activity including theft from Home Depot Stores, which would be expected to lead to arrest and institution of criminal prosecutions of citizens including Plaintiff.

212.     The Defendants, Harris and John Does 1-10, did not have minimal competence to perform the quasi-law enforcement or legal tasks they were assigned as agents and employees of Home Depot, or to investigate loss prevention matters such that innocent customers are not improperly reported to police as criminals.

213.     Defendants, Harris and John Does 1-10, failed to properly investigate facts that would have assisted in evaluation of whether the video of Plaintiff entering and exiting the Home

Depot store in Mahwah actually showed a theft or a customer leaving the store with items previously purchased online.

214.    Defendants, Harris and John Does 1-10, failed to interview other employees, failed to communicate with Plaintiff as a known frequent contractor customer, and failed to review data maintained by Home Depot showing Plaintiff's extensive online purchase history, including roofing cement.

215.    Home Depot knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of its Defendant-employees named in this action, and could reasonably have foreseen that such qualities created a risk of harm to other persons such as Plaintiff, including for violations of criminal due process rights.

216.    Home Depot was negligent in the hiring, promotion and retention of the Defendant-employees named in this action.

217.    That negligence directly and proximately resulted in the false arrest, false imprisonment, malicious prosecution of Plaintiff and a violation of Plaintiff's constitutional rights, and proximately caused his unlawful incarceration for 9 days, including 8 days in Riker's Island for a $312.00 shoplifting claim.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 11 - Negligent Failure to Train-Home Depot Defendants</u>

218.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

219.    The Defendants, Harris and John Does 1-10, were not fit to perform the duties that they had on behalf of Home Depot because they were not properly trained in proper investigative

methods and the significant portion of Home Depot's business involving out of store and online purchases of items that are later picked up by customers who bypass the points of sale.

220.    The Defendants knew or should have known the proper procedures to follow for such loss prevention investigations, and should have known a method to review a customer's online purchases prior to reporting a theft based only on an isolated video of a customer exiting a store without stopping at a point-of-sale.

221.    The Defendants' negligent hiring directly and proximately caused Home Depot's defendant-employees to falsely report a theft attributed to Plaintiff merely because a video showed Plaintiff exiting a store without stopping at a point-of-sale.

222.    Because of Home Depot's negligent failure to train and/or supervise the employee Defendants named in this action, those Defendants did not have minimal competence to perform the investigative loss prevention they were assigned as agents and employees, and which would prevent false and unfounded allegations of theft against Home Depot customers who purchase items online for in-store pickup later, such as Plaintiff.

223.    Home Depot knew or had reason to know of the Defendant-employee's lack of knowledge and need for training and supervision as to legal methods of investigation of loss prevention and that Home Depot maintains a major portion of its business involving online purchases for later ins-tore pickup whereby customers do not pass by traditional points of sale.

224.    Home Depot could reasonably have foreseen that such lack of training or supervision of loss prevention employees such as Harris and John Does 1-10 created a risk of harm to other persons such as Plaintiff, including for unfounded accusations of theft by customers who purchased items online for instore pickup, such as the Plaintiff.

225.    Home Depot was negligent in the training and supervision of the Defendant-employees named in this action.

226.    That negligence directly and proximately resulted in a violation of Plaintiff's constitutional rights, false accusations of theft by Home Depot, false imprisonment, malicious prosecution and abuse of criminal process, and proximately caused Plaintiff's unlawful incarceration for 9 days over $312.00 of roofing cement that Plaintiff had purchased online for instore pickup.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 12 - Negligent Infliction of Emotional Distress-All Defendants</u>

227.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

228.    All Defendants acted negligently in this matter for the reasons stated above.

229.    All Defendants owed a duty of care to Plaintiff to take appropriate actions to avoid the Plaintiff's deprivation of civil rights, loss of liberty, false arrest and false imprisonment.

230.    All Defendants breached their duties of care.

231.    The negligence of all Defendants proximately caused mental, emotional and physical distress to the Plaintiff by virtue of his surprise and unlawful imprisonment in Riker's Island prison for 8 days upon returning from visiting his sick mother.

232.    8 days of detention in a dangerous prison without knowledge of how long said imprisonment would last was significantly damaging to Plaintiff's mental, physical and emotional well-being.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 13 - Respondeat Superior-Township of Mahwah</u>

234.    Plaintiff repeats and realleges all of the allegations previously stated.

235.    The Township of Mahwah is liable for all of the wrongful acts of its employees who deprived Plaintiff of his rights to due process, liberty and freedom from unreasonable seizures, and who maliciously prosecuted the Plaintiff, who abused process resulting in Plaintiff's unlawful incarceration, and who violated the Plaintiff's federal state civil rights under color of law.

236.    To the extent that any employees of the Township of Mahwah are liable to Plaintiff for damages, the Township of Mahwah is also liable to Plaintiff under the doctrine of respondeat superior, and pursuant to N.J.S.A. 59:2-2 where the employed Defendants were acting within the scope of their employment.

WHEREFORE: Plaintiff demands judgment of the Court against the Township of Mahwah, jointly and severally with any other Defendant who was employed by the Township of Mahwah, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 14 - Respondeat Superior-Home Depot</u>

237.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

238.    Home Depot is liable for all of the wrongful acts of its employees who deprived Plaintiff of his rights to due process, liberty and freedom from unreasonable seizures, and who maliciously prosecuted the Plaintiff, who abused process resulting in Plaintiff's unlawful incarceration, and who violated the Plaintiff's federal state civil rights under color of law.

239.    To the extent that any employees of Home Depot are liable to Plaintiff for damages, Home Depot is also liable to Plaintiff under the doctrine of respondeat superior, where the employed Defendants were acting within the scope of their employment.

WHEREFORE: Plaintiff demands judgment of the Court against Home Depot, jointly and severally with any other Defendant who was employed by Home Depot, awarding Plaintiff

compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Count 15 – Intentional Infliction of Emotional Distress - Mahwah Defendants</u>

240.    Plaintiff repeats and realleges all of the allegations previously stated as if set forth herein verbatim.

241.    The conduct of Mahwah and its Defendant, employees and John Does 1-10 was intentional and extreme and intended to cause the loss of Plaintiff's liberty in such a manner that it was beyond all bounds of decency and utterly intolerable in a civilized society whereby citizens are entitled to freedom from illegal actions under the guise of law enforcement.

242.    As a direct and proximate result of the intentional acts of the Defendants they inflicted emotion and physical and mental distress on the Plaintiff by virtue of his 8-day long incarceration in Riker's Island prison and thereafter.

WHEREFORE: Plaintiff demands judgment of the Court against all Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages and for reimbursement of Plaintiff's attorneys' fees, and for all such other and further relief as the Court deems fair and just.

<u>Local Civil Rule 11.2 Certification</u>

The matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.  I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all claims.

**ANTHONY X. ARTURI, LLC**
Attorneys for Plaintiff

Anthony X. Arturi, Esq.

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BASHAR SABBAGH

## DEFENDANTS
TOWNSHIP OF MAHWAH, TIMOTHY LETAVISH, ERIC LARSEN, KEVIN HEBERT, HOME DEPOT, INC.

**(b)** County of Residence of First Listed Plaintiff    Bergen
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Bergen
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Anthony X. Arturi, Esq.
Arturi Law Offices

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander   Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability   ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine   Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | Medical Malpractice   Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations   ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education   ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Violation of civil rights; 42 U.S.C. 1983, due process 4th and 14th Amendment U.S. Constitution

Brief description of cause:
Violation of civil rights for unlawful arrest and 9 days detention

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
10/31/2024

SIGNATURE OF ATTORNEY OF RECORD
*ANTHONY ARTURI, ESQ*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.