**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BASHAR SABBAGH,<br><br>        Plaintiff,<br><br>    v.<br><br>TOWNSHIP OF MAHWAH *et al.*,<br><br>        Defendants. | No. 24cv10209 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Bashar Sabbagh brings various federal, state, and common law claims against Defendants Mahwah Police Department Detectives Timothy Letavish, Eric Larsen, Kevin Hebert, Mahwah Municipal Court Administrator Michelle O'Donohue (the "Mahwah Individuals"), the Township of Mahwah ("Mahwah") (collectively, the "Mahwah Defendants"), Home Depot, Inc. ("Home Depot"), Home Depot Employee Dwanye Harris (collectively, the "Home Depot Defendants") and various John Does. D.E. 23 ("First Amended Complaint" or "FAC"). The Mahwah Defendants move to dismiss Counts One, Two, Three, Four, Five, Six, Seven, Twelve, Thirteen, and Fifteen of Sabbagh's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 26 ("Motion" or "Mot.").[1] Sabbagh opposes. D.E. 29 ("Opposition" or "Opp'n"). The Mahwah Defendants reply. D.E. 31 ("Reply").

The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **GRANT in part** and **DENY in part** the Mahwah Defendants' Motion.

---

[1] The Mahwah Defendants filed their Notice of Motion at D.E. 26 but for ease of reference, this Court refers to D.E. 26-1 as the Mahwah Defendants' Motion.

I.      BACKGROUND

A.      Factual Background[2]

Bashar Sabbagh is a contractor who regularly spends thousands of dollars a month at Home Depot.  FAC ¶¶ 17-20.  Sabbagh makes his purchases through his Home Depot contractor account and spent tens of thousands of dollars on online purchases between 2021 and 2022.  *Id.* ¶ 18.  In October 2022, Sabbagh purchased twenty-one buckets of roofing cement from Home Depot, totaling over $2,000 on roofing cement alone.  *Id.* ¶ 20.  Due to recent hurricanes, roofing cement had been in short supply around October 2022.  *Id.* ¶ 25.  Sabbagh would often make online purchases at Home Depot, based on online representations that Home Depot had the items in stock, but when Sabbagh showed up for pickup, those items were often not in stock.  *Id.* ¶ 26.  Because of the shortages, Home Depot employees often provided Sabbagh with equivalent products of what they did have in inventory.  *Id.* ¶ 27.

On October 29, 2022, Sabbagh went to Home Depot to pick up three buckets of roofing cement that he had been shorted on a previous pickup order.  *Id.* ¶¶ 11, 28-29.  Sabbagh communicated the missing buckets of roofing cement to a Home Depot employee who helped him locate the cement.  *Id.* ¶¶ 29-30.  An excerpt of surveillance footage that Detective Letavish and a Home Depot employee viewed demonstrates Sabbagh walking into Home Depot through a contractor exit with a shopping cart that was already loaded.  *See id.* ¶ 43.  The surveillance footage also shows Sabbagh walking out of Home Depot's entrance with three buckets of roofing cement, along with the other previously loaded items, after briefly pausing by the entrance and observing Home Depot employees gathered in a meeting.  *Id.* ¶ 14.  The three buckets of roofing cement

---

[2] For the purpose of the Motion, the Court accepts the factual allegations of the First Amended Complaint as true and draws all inferences in the light most favorable to the Plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

were valued at a total of $312. *Id.* ¶ 12. Home Depot identified Sabbagh as the individual based on the excerpted surveillance footage and filed a citizen's complaint with the Mahwah Police Department, identifying Sabbagh as a shoplifter. *Id.* ¶¶ 11-14, 21. Detective Letavish of the Mahwah Police Department contacted Sabbagh and visited him at his home as part of his investigation. *Id.* ¶¶ 31-32. At Sabbagh's home, Sabbagh explained to Detective Letavish that he had purchased twenty-one buckets of roofing cement in the past month, that Home Deport was short three buckets when he last went to pick up his order, and that while at Home Depot on October 29, 2022, Sabbagh spoke with a Home Depot employee about the roofing cement before he picked them up and walked out. *Id.* ¶¶ 31-34. Sabbagh also showed Detective Letavish his online purchasing history with Home Depot, which showed the thousands of dollars Sabbagh had spent at Home Depot over just the past month. *See id.* ¶ 35. Sabbagh also provided Detective Letavish with his billing statements and records of purchase. *Id.* ¶ 39. Although Sabbagh requested that he do so, Detective Letavish did not request the entire surveillance footage from Home Depot.

On December 22, 2022, Detective Letavish prepared an application for a warrant to arrest Sabbagh for the proposed shoplifting offense. *Id.* ¶ 62. Detective Letavish's supervisor, Detective Larsen, approved of Detective Letavish's application. *Id.* ¶ 63. O'Donohue, a municipal court administrator, approved of the warrant application after purporting to find probable cause based on Detective Letavish's affidavit of probable cause. *Id.* ¶¶ 64-65. Detective Letavish's affidavit of probable cause described only the excerpted surveillance footage he viewed, but did not disclose the substance of his interviews with Sabbagh, the purchase history receipts Sabbagh submitted to Detective Letavish, Home Depot's acknowledgement that Sabbagh was a frequent contractor shopper, that Sabbagh requested that Detective Letavish review the entire surveillance footage, or

that Detective Letavish was unable to obtain from Home Depot a sworn statement that Sabbagh had, in fact, stolen the roofing cement. *Id.* ¶¶ 65-71.

Based upon Detective Letavish's application and O'Donohue's approval, a Complaint/Warrant issued for Sabbagh's arrest in December. *See id.* ¶¶ 74, 137. Sabbagh alleges that using a Complaint/*Warrant* to initiate criminal process was improper and that a Complaint/*Summons* should have issued pursuant to New Jersey Court Rules 3:2-1 & 3:3-1. *Id.* ¶¶ 49-62. A Complaint/Summons would have required the review of a county prosecutor and the approval of a judge before issuance and could not have rested on the approval of a municipal court administrator. *Id.* A Complaint/Summons would have also required Sabbagh to appear in Court prior to arrest, where his attorney, who was in contact with Detective Letavish, could have appeared as well. *Id.* ¶¶ 126-33. Neither a county prosecutor's review nor Sabbagh's appearance in Court before arrest were required with a Complaint/Warrant. *Id.*

After Sabbagh informed Detective Letavish that he had gone to Syria to visit his ill mother and that he would respond to any summons when he returned in January, Detective Letavish registered the warrant with the National Crime Information Center, listed Sabbagh as a fugitive evading arrest, and directed other police departments to arrest him immediately upon any encounters with him. *Id.* ¶¶ 140-44. When Sabbagh returned home through John F. Kennedy Airport, he was detained by Customs and Border Protection agents and taken to Rikers Island. *Id.* ¶¶ 147-51. The next day, Sabbagh appeared in New York City Criminal Court where the People of the State of New York represented that the Mahwah Police Department had claimed Sabbagh was attempting to flee the country to evade arrest. *Id.* ¶ 152. Because of the Mahwah Police Department's representations, the New York City Criminal Court denied Sabbagh bail. *Id.* ¶ 154. Sabbagh remained in Rikers Island for over a week even though the Queens District Attorney,

Sabbagh's wife, and Sabbagh's counsel had informed Detectives Letavish and Hebert, that Sabbagh was being held at Rikers Island. *Id.* ¶¶ 156-61.

Sabbagh was retrieved from Rikers Island on February 7, 2023. *Id.* ¶ 161. The next day on February 8, 2023, the Bergen County Prosecutor's Office reviewed Sabbagh's case for the first time and immediately released Sabbagh and downgraded the charged offense to one for disorderly persons. *Id.* ¶ 162. Sabbagh was tried on November 16, 2023 for a disorderly persons offense in Central Municipal Court in Bergen County and he was acquitted. *Id.* ¶¶ 177-78.

**B.    Procedural History**

Sabbagh filed a fifteen-count Complaint against the Mahwah Defendants, the Home Depot Defendants, and various John Does on October 31, 2024. D.E. 1. On December 20, 2024, Defendants filed an answer. D.E. 3. On February 11, 2025, the Mahwah Defendants moved to dismiss Sabbagh's Complaint. D.E. 12. In accordance with this Court's judicial preferences, this Court administratively terminated the Mahwah Defendants' premature motion and directed them to file a pre-motion letter with this Court. D.E. 13. The Mahwah Defendants did so on February 18, 2025. D.E. 14. Sabbagh initially filed an overlength responsive pre-motion letter, D.E. 15, but thereafter filed a pre-motion letter that complied with this Court's judicial preferences, D.E.18. This Court then held a pre-motion conference on March 17, 2025, where the parties agreed that Sabbagh would file an amended complaint, and the Mahwah Defendants would move thereafter to dismiss. D.E. 20.

Sabbagh filed his fifteen-count First Amended Complaint on April 16, 2025. D.E. 23. Sabbagh's First Amended Complaint brings claims against:

- All Defendants under New Jersey common law for negligent infliction of emotional distress (Count Twelve);

- Mahwah Individuals under 42 U.S.C. § 1983[3] for malicious prosecution (Count One), abuse of process (Count Two), false arrest/false imprisonment (Count Five), and for general civil rights violations (Count Three);[4]

- Mahwah Defendants under N.J. Stat. Ann. § 10:6-2 for general civil rights violations (Count Four);

- All Mahwah Defendants under New Jersey common law for Intentional Infliction of Emotional Distress (Count Fifteen);

- Mahwah under 42 U.S.C. § 1983 for negligent hiring (Count Six) and negligent failure to train (Count Seven);[5]

- Mahwah under New Jersey common law for respondeat superior (Count Thirteen); and

---

[3] Sabbagh's First Amended Complaint does not make clear whether he brings his malicious prosecution, abuse of process, false imprisonment/false arrest, or general civil rights violations claims under New Jersey common law or as an action under § 1983. *See generally* FAC. Sabbagh's Opposition, however, applies § 1983. Opp'n at 20. The Court therefore construes Sabbagh's malicious prosecution, abuse of process, false imprisonment/false arrest, or general civil rights violations claims as § 1983 actions, rather than under New Jersey common law actions.

[4] Sabbagh's First Amended Complaint states that he brings Counts One, Two, Three, and Five against all Mahwah Defendants. It is not clear whether Sabbagh intended to bring his § 1983 claims (apart from negligent hiring and negligent failure to train) against Mahwah. Because there is no § 1983 liability available against municipalities outside of bringing a *Monell* claim, the Court construes Sabbagh to bring these claims as only against the Mahwah Individuals. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

[5] Sabbagh's First Amended Complaint states that he brings both Counts Six and Seven against all Mahwah Defendants. The Court construes Sabbagh's First Amended Complaint to bring Counts Six and Seven against only Mahwah because it identifies only Mahwah in the relevant paragraphs and because in Opposition, Sabbagh addresses only Mahwah. Opp'n at 33-36; *see, e.g.*, FAC ¶ 291 ("The Township of Mahwah was negligent in the hiring, promotion, and retention of the Defendant-employees named in this action."), ¶ 308 ("The Township of Mahwah was negligent in the training and supervision of the Defendant-employees named in this action."); *see also id.* ¶¶ 286-313; *See* Opp'n at 36 (arguing that "Plaintiff can succeed in showing the municipality is liable for the actions of the police Defendants" for Counts Six and Seven).

- Home Depot Defendants for malicious prosecution (Count Eight), false arrest/false imprisonment (Count Nine), negligent hiring (Count Ten), negligent failure to train (Count Eleven), and *respondeat superior* (Count Fourteen).[6]

First Amended Complaint.  The Mahwah Defendants' Motion followed.  D.E. 26.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Although there is no "'probability requirement,'" plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully.  *Id.*  The allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

---

[6] Sabbagh's First Amended Complaint does not state whether he seeks to bring these claims under statute or common law.  Because none of the Home Depot Defendants move to dismiss, the Court does not currently attempt to construe exactly what causes of actions Sabbagh brings against them.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## III.    ANALYSIS

### A.    Individual Liability

#### 1.    *Malicious prosecution (Count One)*

To bring a § 1983 claim for malicious prosecution, a plaintiff must establish: (1) defendants instituted a criminal proceeding against plaintiff; (2) plaintiff received a favorable termination in the criminal proceeding; (3) defendants instituted the criminal proceeding without probable cause; (4) defendants acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) plaintiff suffered a deprivation of liberty. *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017).

Sabbagh brings a § 1983 claim for malicious prosecution claim against the Mahwah Individuals (Count One). Sabbagh alleges that after Detective Letavish became dissatisfied with Sabbagh's refusal to voluntarily turn himself in,[7] Detective Letavish intentionally omitted exculpatory information from his affidavit of probable cause to secure an arrest and to institute criminal charges against Sabbagh. FAC ¶¶ 118, 193-213. Defendants argue that Sabbagh's pleadings are deficient because there was probable cause and because the Supreme Court's

---

[7] Sabbagh had no obligation to voluntarily turn himself in for arrest in the absence of an arrest warrant. Defendants do not contend otherwise.

decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) precludes Sabbagh's malicious prosecution argument. MTD at 19. Both of Defendants' arguments fail.

i.    Sabbagh pleads an absence of probable cause

*First*, Sabbagh has adequately pleaded the absence of probable cause. Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been . . . committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). In addition to considering inculpatory evidence, officers must consider plainly exculpatory evidence before concluding that probable cause exists. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000).

When an officer's conclusion about probable cause is challenged, it is usually up to the jury (or other factfinder) to determine if that conclusion was correct. *Shelley v. Wilson*, 339 F. App'x 136, 138 (3d Cir. 2009). A district court may, however, nevertheless conclude that probable cause existed if the evidence, when "viewed in the light most favorably to the plaintiff, reasonably would not support a contrary factual finding." *Id.* (quoting *Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003)).

In his affidavit for probable cause, Detective Letavish described only the excerpted surveillance footage he viewed from Home Depot, which showed that Sabbagh walked in with certain items on a shopping cart, retrieved three buckets of cement, observed that Home Depot employees were in a meeting when he was ready to leave, and then exited the store without stopping by a cash register. D.E. 26-7 at 6. Had this been the only information available to Detective Letavish at the time that he prepared the affidavit for probable cause, the Court would agree that even "viewed in the light most favorable to [Sabbagh, the First Amended Complaint] reasonably would not support a contrary factual finding." *Shelley*, 339 F. App'x at 138 (quoting

*Marasco*, 318 F.3d at 514).  Although a summary of the excerpted surveillance footage was all that was made available to *O'Donohue*, it was not all that was available to *Detective Letavish* at the time he prepared the affidavit.

When Detective Letavish interviewed Sabbagh at his home, Sabbagh provided Detective Letavish with receipts that showed he purchased twenty-one buckets of cement leading up to the alleged shoplifting.[8]  Sabbagh also shared his order history with Detective Letavish, which consisted of multiple separate orders for cement.  Because the relevant events took place during hurricane season, Sabbagh explained that Home Depot was often out of cement.  On a particularly recent order, Home Depot was purportedly short three buckets of cement, so Sabbagh told Detective Letavish that he went to Home Depot to pick up the shorted buckets of cement.

Detective Letavish, however, proceeded to maintain the shoplifting offense against Sabbagh.  And despite Detective Letavish's conversations and exchanges with Sabbagh, Detective Letavish did not disclose in his affidavit for probable cause Sabbagh's exculpatory explanation, the receipts that Sabbagh sent him, any efforts to view the entire surveillance footage, or any efforts to interview Home Depot employees on duty.  D.E. 26-7 at 6.  Therefore, O'Donohue's independent review of the arrest warrant application does not, at this stage, absolve the Mahwah Defendants of potential liability.  *Wilson*, 212 F.3d at 786-87.

To determine whether Detective Letavish's omissions were material, the court "must perform a word-by-word reconstruction of the affidavit."  *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016).  Detective Letavish's affidavit of probable, reconstructed, would state:

---

[8] Defendants maintain that Detective Letavish was free to discount Sabbagh's prior purchases because a receipt showed that Sabbagh returned all of the cement buckets from one of his orders.  MTD at 10.  Sabbagh alleges, and Defendants do not dispute, that Sabbagh provided Detective Letavish with more than one receipt for orders of cement and that while in his home, Sabbagh reviewed all of his recent orders with Detective Letavish.  Opp'n at 5; FAC ¶ 32.

The Home Depot's asset protection specialist Dwayne Harris contacted this agency regarding a shoplifting matter which occurred on 10/29/2022. On that evening, a male party, later identified as Bashar Sabbagh enters the store through the contractor exit with a few items in the upper section of the cart. Sabbagh walks around the store and places (3) containers of Henry on the lower level of the cart and proceeds to walk toward the entrance of the store. Sabbagh briefly pauses and looks at the service desk before exiting through the entrance door with the goods he did not pay for. The incident was captured on CCTV.

**Upon interview, Sabbagh explained that he is a contractor who frequently makes purchases from Home Depot online. Sabbagh explained that he had purchased (21) containers of Henry that month. According to Sabbagh, upon pickup of a recent order of containers, Home Depot was short (3) containers. Sabbagh stated that on the day of the incident, a Home Depot employee assisted him so that he may retrieve the missing (3) containers. Sabbagh claims this could have been observed if the entire surveillance footage was provided. Home Depot did not provide longer surveillance footage. No interviews took place with Home Depot employees who were on duty the day of the incident.**

D.E. 26-7 at 6 (alleged omissions added in **bolded text**).

Based upon Sabbagh's allegations, Detective Letavish appears to have improperly excluded material exculpatory evidence from the affidavit of probable cause, which served as the basis for the Sabbagh arrest warrant. These omissions do not appear harmless. That: (1) Sabbagh was a frequent purchaser from Home Depot whose recent purchases included twenty-one buckets of cement; (2) Sabbagh was shorted three buckets of cement on a prior order during a time that Home Depot often lacked stock of the items it represented were in its inventory; and (3) a more fulsome review of the surveillance footage or interviews of the Home Depot employees would have revealed Sabbagh's actions are all plainly relevant to whether it was reasonable to believe that Sabbagh shoplifted the cement. *See, e.g.*, *Wilson*, 212 F.3d at 788.

Taking Sabbagh's allegations as true and making reasonable inferences in Sabbagh's favor, Sabbagh's pleadings, at minimum, call into question (1) what Detective Letavish knew at the time he prepared the affidavit of probable cause; (2) whether the omissions in Detective Letavish's

affidavit of probable cause were material; and (3) what was reasonable for Detective Larsen and for O'Donohue to believe at the time they reviewed Detective Letavish's affidavit of probable cause.  The Court, therefore, cannot conclude at this stage that the Mahwah Individuals had probable cause at the time Sabbagh's arrest was executed.  *See Shelley*, 339 F. App'x at 138.

ii.    Sabbagh's claim is not barred by Heck

*Second*, Sabbagh's claim is not barred by *Heck v. Humphrey*, which requires dismissing malicious prosecution actions that would "necessarily imply the invalidity of [the plaintiff's underlying] conviction or sentence."  512 U.S. at 486-87.  Here, there is no underlying conviction or sentence.  Sabbagh went to trial on downgraded charges and was acquitted.  He received a favorable termination of the underlying criminal prosecution.  *Thompson v. Clark*, 596 U.S. 36, 39 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.").  There is therefore no concern that Sabbagh's malicious prosecution action would imply the validity of any conviction or sentence.

Accordingly, the Court will **DENY** the Motion with respect to Count One.[9]

2.    *False arrest/imprisonment (Count Five)*

To bring a § 1983 claim for false arrest, a plaintiff must establish:  "(1) that there was an arrest; and (2) that the arrest was made without probable cause."  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)).

---

[9] It is not clear to the Court that Sabbagh may maintain Count One against *all* Mahwah Individuals. Because the Mahwah Defendants move to dismiss this claim only on grounds that there was probable cause and that *Heck v. Humphrey* bars this claim, the Court will not address whether the cause of action may be maintained against each individual defendant.  The Court would consider summary judgment motions that seek to dismiss as to individual defendants upon completion of discovery.

To bring a § 1983 claim for false imprisonment, a plaintiff must establish "(1) that he was detained; and (2) that the detention was unlawful." *Id.* at 202 (quoting *James*, 700 F.3d at 682-83). When the police lack probable cause and nevertheless arrest and detain an individual, that individual may maintain both a false arrest and false imprisonment claim under § 1983. *Id.* In addition, a police officer's deliberate or reckless omission of material exculpatory evidence in an application for a warrant permits a plaintiff's § 1983 action for false arrest/false imprisonment to proceed. *Wilson*, 212 F.3d at 786-87.

Sabbagh brings false arrest/false imprisonment claims against the Mahwah Individuals. Sabbagh alleges that the Mahwah Defendants used an improperly acquired and improperly deployed arrest warrant to secure Sabbagh's arrest and detainment in Rikers Island for eight days. FAC ¶¶ 279-85. Defendants argue that Sabbagh's pleadings fail because the Mahwah Defendants had probable cause to arrest and detain him and because O'Donohue's independent finding of probable cause precludes Sabbagh's claims. Mot. at 13. As previously explained, Sabbagh adequately pleads an absence of probable cause based on material that Detective Letavish failed to provide to O'Donohue, and that she therefore had no opportunity to consider. *See supra* Section III.A.1.i.

Accordingly, Sabbagh had adequately pleaded a § 1983 claim for false arrest/false imprisonment and the Court will **DENY** the Motion regarding Count Five.[10]

---

[10] Like with Count One, *see supra* n.9, it is not clear that Sabbagh may maintain Count Five against *all* Mahwah Individuals. But because the Mahwah Defendants move to dismiss this claim only on grounds that there was probable cause, the Court will not address whether the cause of action may be maintained against each individual defendant. The Court would consider summary judgment motions that seek to dismiss as to individual defendants upon completion of discovery.

### 3.    Abuse of process (Count Two)

The Mahwah Defendants purport to move to dismiss Sabbagh's § 1983 abuse of process claim.  Mot. at 4.  The Mahwah Defendants suggest that Sabbagh cannot prove his abuse of process claim because probable cause supported Sabbagh's arrest, but they do not actually make any argument.  *See* Mot. at 12.  To the extent the Court should construe the Mahwah Defendants' suggestion as argument, Sabbagh plausibly pleads an absence of probable cause.  *See supra* Section III.A.1.i.  Accordingly, the Court will **DENY** the Motion with respect to Count Two.[11]

### 4.    Negligent infliction of emotional distress (Count Twelve)

The Mahwah Defendants similarly purport to move to dismiss Sabbagh's negligent infliction of emotional distress ("NIED") claim. Mot. at 4.  The Mahwah Defendants, however, make no argument pertaining to Sabbagh's NIED claim.  Accordingly, to the extent the Court should consider the Mahwah Defendants to have moved to dismiss the claim, the Court will **DENY** the Motion with respect to Count Twelve as to the Mahwah Individuals.

### 5.    Intentional infliction of emotional distress (Count Fifteen)

Sabbagh brings an intentional infliction of emotional distress ("IIED") claim against the Mahwah Individuals.  To prove IIED, a plaintiff must demonstrate four elements.  *First*, that a defendant engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community."  *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988) (quoting Restatement (Second) of Torts, § 46 cmt. d (Am. L. Inst. 1965)).  *Second*, that the defendant

---

[11] Again, *see supra* n.9 & n.10, it is not clear that Sabbagh may maintain Count Two against *all* Mahwah Individuals.  Because the Mahwah Defendants move to dismiss this claim only on grounds that there was probable cause, the Court will not address whether the cause of action may be maintained against each individual defendant.  The Court would consider summary judgment motions that seek to dismiss as to individual defendants upon completion of discovery.

possessed the intent to engage in the outrageous conduct and to cause emotional distress or that the defendant acted recklessly in deliberate disregard of a high degree of probability that his outrageous conduct would cause emotional distress. *Id. Third*, the outrageous conduct "must have been the proximate cause of the plaintiff's emotional distress." *Id.* Finally, the emotional distress must have been "so severe that no reasonable man could be expected to endure it." *Id.*

Because the Mahwah Defendants challenge only the sufficiency of Sabbagh's pleadings against the Mahwah Individuals as they relate to whether the conduct was outrageous and whether the Mahwah Individuals possessed the intent to engage in outrageous conduct, the Court addresses only the first two elements of the standard for intentional infliction of emotional distress. Mot. At 25-29. Neither argument is persuasive as to Detective Letavish. The arguments, however, are persuasive as to O'Donohue, Detective Larsen, and Detective Hebert for whom Sabbagh fails to plead intent.[12]

>                 *a.*    <u>Detective Letavish</u>

Sabbagh's allegations identify three categories of conduct that provide a satisfactory basis for his IIED claim. *First*, Sabbagh complains that Detective Letavish intentionally omitted exculpatory information from his affidavit of probable cause, FAC ¶¶ 69-71, 107-18. *See Rasheedah Heard, as parent and natural guardian of Minor I.A., Plaintiff v. City of Plainfield*, No. 24-10293, 2025 WL 3017902, at *22 (D.N.J. Oct. 28, 2025) (finding that plaintiff pleaded that the defendants "acted outrageously when they worked in conjunction with law enforcement" to arrest plaintiff without probable cause).

---

[12] Because intent is necessarily an individualized inquiry, the Court must address the sufficiency of Sabbagh's pleadings as they relate to intent for each specific Mahwah Individual. *See Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007) (explaining in a securities fraud case, when pleading scienter is required, the pleadings must allege that "the defendant acted with the required state of mind" (citation modified)).

*Second*, Sabbagh pleads that Detective Letavish mischaracterized Sabbagh to the Queens District Attorney as a fugitive attempting to leave the United States to evade arrest, which resulted in Sabbagh's seizure at John F. Kennedy Airport upon his return from visiting his mother, FAC ¶¶ 141-53. *See Kelley v. Reyes*, No. 19-17911, 2020 WL 3567285, at *8 (D.N.J. July 1, 2020) ("[C]ausing false legal process is a basis for an IIED claim.").

*Third*, Sabbagh pleads that Detective Letavish ignored notice from the Queens District Attorney, Sabbagh's wife, and Sabbagh's counsel that he had been detained and placed in Rikers Island, thereby causing his extended and improper imprisonment there before transferring him to the custody of the Bergen County Prosecutor's Office (where he was immediately released), FAC ¶¶ 156-62. The Mahwah Defendants argue that the only reason they did not retrieve Sabbagh any sooner was because the Queens District Attorney sent an email about Sabbagh's detainment to the wrong email address. Reply at 14-15. This argument, however, is one of fact and inappropriate for consideration at the motion to dismiss stage. *See Doe*, 30 F.4th at 345 (explaining that at the motion to dismiss stage, courts may not consider "[f]actual claims and assertions raised by a defendant").

Accordingly, the Court finds that Sabbagh has plausibly pleaded at least the first two elements of an IIED claim against Detective Letavish.

        b.        *O'Donohue and Detectives Larsen and Hebert*

In contrast to Sabbagh's allegations about Detective Letavish's motives, Sabbagh does not indicate that O'Donohue, Larsen, and Hebert acted with the knowledge that the information in the affidavit of probable cause lacked material exculpatory information. Nor does Sabbagh allege that O'Donohue or Detectives Larsen or Hebert knew that Sabbagh was not, in fact, a fugitive evading arrest nor that they received notice about Sabbagh's detainment in Rikers Island. Instead, Sabbagh

impermissibly directs his allegations against all "Defendants" as a group without alleging the personal involvement or personal knowledge of anyone in particular (other than Detective Letavish). *Compare* FAC ¶ 141 ("Plaintiff emailed Letavish to advise that he was out of the country visiting his mother, who was ill, and that he would address the shoplifting charge when he returned."), *with id.* ¶ 142 ("Defendants also specially listed Plaintiff as a fugitive when they knew he was not one."). "Even under the most liberal pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Kelly v. Ewing Twp.*, No. 24-10824, 2025 WL 1993631, at *3 (D.N.J. July 17, 2025) (quoting *Shaw v. Hous. Auth. Of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012)). Sabbagh's pleadings do not permit the Court to distinguish between the Mahwah Individuals, beyond Detective Letavish, with respect to intent. Sabbagh therefore fails to plausibly allege that O'Donohue and Detectives Larsen and Hebert acted with the intent to cause emotional distress.

Because Sabbagh's First Amended Complaint plausibly pleads that Detective Letavish's conduct was outrageous and that Detective Letavish intended to engage in outrageous conduct, the Court will **DENY** the Motion with respect to Count Fifteen against Detective Letavish. Because Sabbagh's First Amended Complaint fails to plausibly plead that O'Donohue and Detectives Larsen and Hebert possessed the intent to engage in outrageous conduct, the Court will **GRANT** the Motion with respect to Count Fifteen against those individuals ***without prejudice***.

### 6.    *Qualified immunity*

The Mahwah Defendants also seek to dismiss Sabbagh's claims on grounds of qualified immunity. Mot. at 35-37. Qualified immunity provides "immunity from suit" and absolves government officials of the obligation to stand trial so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Mitchell v. Forsyth*, 472 U.S. 511, 517 (1985). Whether a government official may invoke qualified immunity "turns on the 'objective legal reasonableness' of the official's action, 'assessed in light of the legal rules that were clearly established at the time it was taken.'" *Stringer v. County of Bucks*, 141 F.4th 76, 84-85 (3d Cir. 2025) (first quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); then quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

To circumvent a defendant's invocation of qualified immunity, a plaintiff must show that (1) the defendant official violated a constitutional or statutory right and (2) the right was clearly established at the time of the violation. *Stringer*, 141 F.3d at 85 (citing *George v. Reheil*, 738 F.3d 562, 571-72 (3d Cir. 2013)). Although the Supreme Court has encouraged district courts to resolve questions of qualified immunity as early as is practicable, the pleading stage is not often the right time. *Fogle v. Sokol*, 957 F.3d 148, 162 n.14 (3d Cir. 2020) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbook, J., concurring in part and concurring in the judgment)). Indeed, "Rule 12(b)(6) is often 'a mismatch for immunity and almost always a bad ground for dismissal.'" *Stringer*, 141 F.4th at 85 (quoting *Sokol*, 957 F.3d at 162 n.13).

This is because determining "whether the right allegedly violated was 'clearly established' . . . presents unique difficulties at the pleading stage." *Id.* (citing *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) and *Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996)). It is a "fact-intensive inquiry" that depends on the specific context and nature of the case. *Id.* at 85-86 (quoting *Grant*, 98 F.3d at 122). Accordingly, unless the face of the complaint establishes whether a right was "clearly established or not," a "district court must deny the motion to dismiss and seek to resolve qualified immunity at summary judgment." *Id.* at 85-87. Discovery should then proceed to resolve the qualified immunity defense and only once a defendant official's claim to qualified

immunity is denied with prejudice, should discovery regarding the remaining issues proceed.  *Id.* (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 301-02 (3d Cir. 2006)).

Because Sabbagh has raised a question regarding whether there was probable cause to arrest him, he satisfies the first prong of the analysis necessary to circumvent the application of qualified immunity.  *See id.* at 85 ("[A] well-pleaded § 1983 complaint necessarily alleges a constitution violation for purposes of qualified immunity . . .").  The Court, however, cannot determine, based on the pleadings alone, whether the right violated was clearly established or not. As the Third Circuit explained in *Stringer*, plaintiffs have no obligation to disprove the second element of the qualified immunity standard in their pleadings and therefore, until the record expands, resolving the question of qualified immunity may not be possible.  *Id.* at 86-90.  Because Sabbagh's First Amended Complaint does not shed light on whether the right violated was clearly established or not, the Mahwah Defendants' Motion to dismiss on qualified immunity grounds is premature.  *See id.* at 86-90.

Accordingly, the Court will **DENY** the Mahwah Defendants' Motion to dismiss based on qualified immunity ***without prejudice***.  The Mahwah Defendants may renew their argument for qualified immunity at the conclusion of discovery.  *Id.*

       7.    *Civil rights violations under N.J. Stat. Ann. § 10:6-2 (Count Four)*

Finally, Sabbagh also brings a claim under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2, for general civil rights violations (Count Four).  The NJCRA is interpreted analogously to 42 U.S.C. § 1983.  *Hedges v. Musco*, 204 F.3d 109, 121 N.12 (3d Cir. 2000).  The Mahwah Defendants seek to dismiss Count Four *only* on the grounds that the NJCRA mirrors 42 U.S.C. § 1983.  Mot. at 29.   As explained in Section III.A.1.i, Sabbagh has cast doubt on the presence of probable cause.  Therefore, because Sabbagh's § 1983 claims survive against the

Mahwah Individuals, so does his NJCRA claim.  Accordingly, the Court will **DENY** the Motion to dismiss Count Four as to the Mahwah Individuals.

### B.    Municipal Liability

#### 1.    *IIED (Count Fifteen)*

Sabbagh brings an IIED claim against Mahwah, but Sabbagh cannot maintain an IIED claim against Mahwah because public entities in New Jersey may not be held liable for the intentional torts committed by employees.  N.J. Stat. Ann. §59:2-10; *see Hoag v. Brown*, 397 N.J. Super. 34, 54 (2007) (holding that there can be no "liability by a public entity for intentional torts committed by its employees").  IIED is an intentional tort.  *Adams v. New Jersey Dep't of Corr.*, No. 21-12482, 2022 WL 1442174, at *6 (D.N.J. May 5, 2022); *see also supra* Section III.A.5 (pleading IIED requires showing defendant's conduct was intentional or deliberate).  The Court will therefore **GRANT** the Mahwah Defendants' Motion *in part* and **DISMISS** Count Fifteen against Mahwah only *with prejudice*.

#### 2.    *Negligent infliction of emotional distress (Count Twelve)*

The Mahwah Defendants purport to move to dismiss Sabbagh's NIED claim.[13]  Mot. at 4. For the same reasons discussed above in *supra* Section III.A.4, the Court will **DENY** the Motion with respect to Count Twelve as to Mahwah.

#### 3.    *Vicarious liability (Count Thirteen)*

Sabbagh brings a respondeat superior claim against Mahwah based upon the § 1983 violations Sabbagh alleges the Mahwah Individuals engaged in.  Because respondeat superior liability is unavailable under § 1983, *Gera v. Commonwealth of Pennsylvania*, 256 F. App'x 563,

---

[13] It is not clear to the Court that Sabbagh may maintain an NIED against Mahwah.  Because the Mahwah Defendants do not raise this argument, the Court does not decide it.

566 (3d Cir. 2007), the Court will **GRANT** the Motion as to Count Thirteen and **DISMISS** Count Thirteen *with prejudice*.

### 4.    *Monell Liability (Counts Six and Seven)*

Sabbagh brings § 1983 claims against Mahwah for negligent hiring and negligent failure to train.[14]  To plead a § 1983 claim against a municipality, a plaintiff must allege that "'a local government's policy or custom . . . inflicted the injury' in question." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell*, 436 U.S. at 694).  "Policy is made when a decision maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).  "Custom" is made when "a given course of conduct although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).  At the pleading stage, a plaintiff need not identify who the responsible decisionmaker is.  *Id.* at 850.  Nor does he need to prove that the alleged custom had formal approval.  *Estate of Roman*, 914 F.3d at 798 (citing *Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986)).

In addition to pleading that the municipality's policy or custom inflicted injury, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries.  *Id.* at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  A plaintiff may demonstrate this by

---

[14] The Court construes the Mahwah Defendants' argument to dismiss Count Three (a general count for unspecific § 1983 civil rights violations) as an argument to dismiss Counts Six and Seven because the Mahwah Defendants address claims directed to negligent hiring and negligent failure to train.  Mot. at 31-34.  To the extent the Mahwah Defendants seek to dismiss Count Three against Mahwah, the Court will **GRANT** that part of the Motion for the same reasons discussed in this Section III.B.4.  The Mahwah Defendants do not make any other argument regarding Count Three.  Therefore, to the extent the Mahwah Defendants seek to dismiss Count Three against the Mahwah Individuals, the Motion is **DENIED**.

pleading that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and this failure, at least in part, led to their injury." *Bielevicz*, 915 F.2d at 851.

i.    <u>Negligent failure to train (Count Seven)</u>

To plead a § 1983 action for negligent failure to train, a plaintiff must "demonstrate that a [municipality's] failure to train its police officers 'reflects a deliberate or conscious choice,'" and that the failure to train "'amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.'" *Estate of Roman*, 914 F.3d at 798 (first quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001), then quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To plead deliberate indifference, a plaintiff must show "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Brown*, 520 U.S. at 409). In the absence of a pattern of violations, however, a plaintiff may prove liability for a single incident only when "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).

The bar for municipal liability based upon a failure to train is difficult to meet. *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997); *see Connick*, 563 U.S. at 61 ("A municipality's

culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

Sabbagh alleges Mahwah should have instructed officers (1) that private citizens (like Home Depot) must "swear out" criminal complaints in those instances when an officer did not himself personally witness a shoplifting incident, FAC ¶¶ 298-99; (2) that in circumstances like Sabbagh's, New Jersey's criminal procedure requires initiating criminal process by a Complaint/Summons, rather than a Complaint/Warrant, *id.* ¶¶ 300-01; (3) to disclose exculpatory information in affidavits of probable cause, *id.* ¶ 302; (4) not to describe individuals as "fugitives" when the individual's whereabouts are known and have been transparently communicated, *id.* ¶ 303; and (5) that individuals detained on Mahwah-issued arrest warrants should be immediately brought before a Court when detained outside of Mahwah, *id.* ¶ 304. Sabbagh's allegations, however, do not adequately plead a § 1983 claim for negligent training or supervision under either a custom/policy theory or under a single-incident theory. Because Sabbagh does not adequately plead a § 1983 claim for negligent failure to train, the Court will **DISMISS** Count Seven *without prejudice*.

### a.    *Custom or policy*

*First*, while Sabbagh's First Amended Complaint alleges different ways in which Mahwah's training was deficient, Sabbagh does not identify any pattern of allegedly similar constitutional violations. Citing nothing, Sabbagh argues in Opposition that he is entitled to discovery to prove a pattern. Opp'n at 35. Not so. Sabbagh must pair his allegations of a deficient training program with examples of violations that suggest a pattern. *See Moriarty v. DiBuonaventura*, No. 14-2492, 2014 WL 3778728, at *7 (D.N.J. July 31, 2014) (dismissing § 1983 negligent failure to train claim because plaintiff failed to identify "a pattern of similar

constitutional violations" and rejecting plaintiff's request for discovery to reveal such a pattern). "It might seem harsh at the pleading stage to require [Sabbagh] to assert facts indicating [a pattern of constitutional violations] but the Supreme Court's decision in *Iqbal* requires it." *Zampetis v. City of Atlantic City*, No. 15-1231, 2016 WL 5417195, at \*6 (D.N.J. Sept. 28, 2016); *see, e.g.*, *Langford v. Gloucester Twp. Police Dep't*, No. 16-1023, 2016 WL 7130912, at \*6 (D.N.J. Dec. 7, 2016) (dismissing § 1983 claim for failure to train in part because the plaintiff did not allege facts showing a pattern of similar violations by untrained employees); *Jacobs v. Palmer*, No. 14-5797, 2015 WL 1033294, at \*5-6 (E.D. Pa. Mar. 10, 2015) (same).  Because Sabbagh does not identify any pattern of constitutional misconduct that is "ordinarily necessary" to plead a § 1983 failure to train or supervise claim, he does not plead a custom or policy. *Connick*, 563 U.S. at 62.

### b.    *Single-incident liability*

*Second*, Sabbagh does not plead a plausible single-incident theory of liability.  The Supreme Court has recognized only a "narrow range of circumstances" under which a § 1983 failure to train claim may proceed absent a pattern of prior violations.  *Brown*, 520 U.S. at 409. Only when the need for training is "'so obvious,' that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations," may single-incident liability arise.  *Thomas*, 749 F.3d at 223 (quoting *City of Canton*, 489 U.S. at 390).  The deployment of armed officers who are untrained in the use of deadly force falls within the "so obvious" category of risk.  *City of Canton*, 489 U.S. at 390. & n.10.  The deployment of a warrant system "where the slip of a finger" can result in a typo and thereby "result in wrongful arrest and imprisonment" may also fall into the "so obvious" category of risk.  *Thomas*, 749 F.3d at 224.  The deployment of officers who are not trained to await a private citizen's sworn attestation that a crime occurred does not present the same kind of risk

when surveillance footage of the alleged crime is available. Nor does failing to train officers on using a Complaint/Summons rather than a Complaint/Warrant (both of which require probable cause) for certain low-level offenses. Nor do Sabbagh's other allegations because none present a risk of the specific constitutional deprivations Sabbagh claims to have suffered that "rise to the level of deliberate indifference." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 741-43 (D.N.J. 2016) (dismissing § 1983 claim for negligent failure to train because plaintiff failed to indicate any deficiency that that could "possibly rise to the level of deliberate indifference needed"). Sabbagh's claims therefore do not satisfy the "stringent standard of fault" needed to show deliberate indifference for purposes of a § 1983 failure to train claim. *Thomas*, 749 F.3d at 223.

Because Sabbagh does not plead facts establishing a pattern of constitutional misconduct nor pleads facts demonstrating Mahwah's deliberate indifference, the Court will **DISMISS** Count Seven ***without prejudice***.

### ii.    Negligent hiring (Count Six)

To plead a §1983 cause of action for negligent hiring, a plaintiff must establish that the municipality's decision to hire reflected "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997). "Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense." *Id.* at 410. Therefore, "'[t]o prevent municipal liability for a hiring decision from collapsing into respondeat superior liability,'" the plaintiff must identify a "link between the failure to screen at hiring and the constitutional injury alleged." *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014) (quoting *Brown*, 520 U.S. at 410-11).

As explained below, Sabbagh's allegations do not adequately plead a § 1983 claim for negligent hiring under either a custom/policy theory or under a single-incident theory.

### a.    Custom or policy

Sabbagh does not identify any Mahwah policy or custom of failing to screen officers before hiring them. Sabbagh alleges only that the Mahwah Individuals lacked "minimal competence," and that Mahwah had reason to know of their "particular unfitness, incompetence or dangerous attributes." FAC ¶¶ 287-291. Sabbagh does not explain what those attributes are nor what "minimal competenc[ies]" Mahwah should have screened for during its hiring process.

### b.    Single-incident liability

To the extent that that Sabbagh relies on a single-incident liability theory for negligent hiring, Sabbagh's pleadings are insufficient. Courts in the Third Circuit have "consistently interpreted *Brown* to mean that municipal liability for negligent hiring based on a single hiring decision requires the threat identified in an applicant's background to be basically *identical* to the harm eventually caused by the applicant." *M.S. ex rel. Hall v. Susquehanna Twp. School Dist.*, 43 F. Supp. 3d 412, 427 (M.D. Pa. 2014). Sabbagh does not identify—beyond the Mahwah Individuals' "particular unfitness, incompetence, [and] dangerous attributes"—what type of threat Mahwah should have and failed to identify. *Id.* ¶¶ 290-92. Culpability cannot depend only on the theory that an officer might be likely to inflict *some* constitutional injury. *See Brown*, 520 U.S. at 412-14 (dismissing negligent hiring claim because the officer's record of assault and battery, resisting arrest, and public drunkenness did not constitute "deliberate indifference" to the right to be free from the use of excessive force). Mahwah must have negligently failed to identify something about the Mahwah Individuals' backgrounds that would have made the constitutional violations *that Sabbagh specifically complains of* a "plainly obvious consequence" of hiring them.

*See Fought v. City of Wilkes-Barre, Pennsylvania*, 466 F. Supp. 3d 477, 519 (M.D. Pa. 2020) (dismissing § 1983 claim for negligent hiring because plaintiff failed to allege that "something in [the defendant's] background would make his use of excessive force in making an arrest a plainly obvious consequence of the hiring decision").

Because Sabbagh does not identify anything in particular (or even in general) that Mahwah should have screened the Mahwah Individuals for, Sabbagh's claims do not allege a plausible claim for negligent hiring. Accordingly, the Court will **DISMISS** Count Six ***without prejudice***.

5.    *Civil rights violations under N.J. Stat. Ann. § 10:6-2 (Count Four)*

Finally, Sabbagh also brings a claim under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2, for general civil rights violations (Count Four). As discussed in *supra* Section III.A.7, the NJCRA is interpreted in New Jersey analogously to 42 U.S.C. § 1983. *Hedges*, 204 F.3d at 121 n.12. Because Sabbagh's § 1983 claims against Mahwah do not survive, nor can his NJCRA claim against Mahwah. *Leak v. City of Paterson*, No. 22-6994, 2025 WL 565241, at *5 (D.N.J. Feb. 19, 2025) ("[C]laims arising under the New Jersey Civil Rights Act and claims under 1983 are generally treated as rising and falling together.").

Accordingly, the Court will **GRANT** the Motion to dismiss Count Four as to Mahwah.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT in part** and **DENY in part** the Mahwah Defendants' Motion. An appropriate Order accompanies this Opinion.

Dated: December 28, 2025

/s/ Evelyn Padin
Evelyn Padin, U.S.D.J.
